**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| The STATE OF TEXAS, *et. al*., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 2:22–cv–00014-M |
| vs. | § | |
| | § | |
| JOSEPH R. BIDEN, JR., | § | |
| in his official capacity as | § | |
| President of the United States, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**MOTION TO INTERVENE UNDER FED. R. CIV. P. 24
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 1

    A.    CAM Refugee and Parole Program and Procedural History .................... 1

    B.    CAM Shutdown; Settlement Requires Reopening ................................... 2

    C.    CAM Refugee and Parole Program Reopened and Old Cases Reinstituted ................................................................................................ 4

    D.    Proposed Intervenors Are the Intended Beneficiaries of the CAM Program ...................................................................................................... 5

ARGUMENT ......................................................................................................... 7

    I.    Proposed Intervenors are Entitled to Intervention as of Right ............................. 7

        A.    Proposed Intervenors' Motion is Timely ................................................. 8

        B.    Proposed Intervenors Have a Protectable Interest in the Case ................. 9

        C.    Proposed Intervenors' Ability to Protect Their Interests May be Impaired Absent Intervention .................................................................. 10

        D.    Defendants May Inadequately Represent Proposed Intervenors' Interests ................................................................................................... 11

    II.    In the Alternative, Proposed Intervenors Should be Permitted to Intervene ....... 15

CONCLUSION .................................................................................................... 17

CERTIFICATE OF CONFERENCE ....................................................................... 18

CERTIFICATE OF SERVICE ............................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ...............................................................10, 11, 12, 16

*Chaucer Corp. Capital, No. 2 Ltd. v. Azad*,
    No. CV H-10-180, 2011 WL 13249479 (S.D. Tex. Sept. 8, 2011) ........................................17

*DeOtte v. State of Nevada*,
    20 F.4th 1055 (5th Cir. 2021) .................................................................................7

*EEOC v. Wellpath*, No. 5:20-CV-1092-DAE, 2021 WL 4096556
    (W.D. Tex. Mar. 15, 2021) ...................................................................................17

*Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*,
    817 F.3d 198, 203 (5th Cir. 2016) ......................................................................7, 11

*League of United Latin Am. Citizens v. Clements*,
    884 F.2d 185 (5th Cir. 1989) ................................................................11, 13, 15, 16

*S.A. v. Trump*
    (*S.A. I*), 363 F. Supp. 3d 1048, 1059 (N.D. Cal. 2018)..................................................2, 3, 14

*S.A. v. Trump*
    (*S.A. II*), No. 18-cv-03539-LB, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) ...........................3

*Second Baptist Church v. City of San Antonio*, No. 5:20-CV-29-DAE,
    2020 WL 6821324 (W.D. Tex. Apr. 17, 2020)...............................................................14, 17

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ................................................................................7, 8, 12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ..................................................................................8

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
    338 F.R.D. 364 (W.D. Tex. 2021) ..........................................................................15, 17

*Symetra Life Ins. Co. v. Rapid Settlements Ltd.*,
    No. CIV.A. H-05-3167, 2006 WL 2382250 (S.D. Tex. Aug. 16, 2006) ..........................15, 16

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ...................................................................... *passim*

*Texas v. United States,*
   No. 6:21-cv-00003, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021)......................................13, 16

*Trbovich v. United Mine Workers of America,*
   404 U.S. 528 (1972)..............................................................................................................14

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
   834 F.3d 562 (5th Cir. 2016) ...............................................................................................9, 11

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................... *passim*

## INTRODUCTION

Proposed Intervenors Jesus, Rosa, Timoteo, and Uzias[1] move to intervene as defendants in this action in which Plaintiff States are seeking to dismantle a humanitarian family reunification program called the Central American Minors ("CAM") Program.  Proposed Intervenors are four parents in different stages of applying to CAM, and whose ability to reunite or remain with their children in safety hangs in the balance. Far from an abstract disagreement between the federal government and the States, this case stands to have a tremendous impact on Proposed Intervenors and thousands like them.  Proposed Intervenors provide crucial perspectives and arguments that will be absent from this case without their intervention.

The Fifth Circuit has made clear that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (internal quotation marks omitted).  Proposed Intervenors respectfully request that the Court grant their motion to intervene as of right, or, in the alternative, permit them to intervene. *See* Fed. R. Civ. P. 24.  Plaintiffs oppose intervention on all grounds; Defendants oppose intervention as of right and take no position on permissive intervention.[2]

## BACKGROUND

### A.    CAM Refugee and Parole Program and Procedural History

Created in 2014, the CAM Program is a dual refugee and parole program that allows parents in the United States with certain legal statuses to apply for their minor, unmarried children living in El Salvador, Honduras, or Guatemala to join them in safety in the United States.  Evarts

---

[1] Proposed Intervenors concurrently file a motion to proceed under pseudonym.

[2] Specifically, Defendants' counsel represented to Proposed Intervenors' counsel that "Defendants oppose intervention as of right under Rule 24(a), and take no position on permissive intervention under Rule 24(b), but note that should the Court grant permissive intervention, it need not address intervention as of right."  *See infra*, Certificate of Conference.

1

Decl., Ex. A, App'x at 100-01.  Filing a CAM application triggers a screening and vetting process for the in-country children and family members, which includes DNA testing to confirm the biological relationship with the U.S.-based parent, security checks, and an in-person interview with a refugee officer.  *Id.*, App'x at 91, 102-03.  The refugee officer determines whether the CAM beneficiary is eligible for refugee resettlement under U.S. law, and if not, considers on a case-by-case basis whether the applicant qualifies for parole for "urgent humanitarian reasons or significant public benefit."  *Id.*, App'x at 104 (internal quotation marks omitted).  A CAM beneficiary "may be eligible for parole if DHS finds that the individual is at risk of harm, he/she clears all background vetting, there is no serious derogatory information, and someone has committed to financially support the individual while he/she is in the United States."  *S.A. v. Trump* (*S.A. I*), 363 F. Supp. 3d 1048, 1057 (N.D. Cal. 2018).  Program beneficiaries who are conditionally approved for parole must pay for and complete a medical exam and pay for their travel before they can reunite with their family in the United States.  Evarts Decl., Ex. A, App'x at 105.  Once granted parole, beneficiaries are allowed to be lawfully present in the United States for a time-limited period, such as three years, and to apply for work authorization.  *Id.*, Ex. B, App'x at 114.  CAM parolees in the United States are eligible to apply to renew their CAM parole for another time-limited period.  *Id.*, App'x at 118-19.

More than 13,000 applicants applied for the CAM Program between 2014 and early 2017. *S.A. I*, 363 F. Supp. 3d at 1059.  By April 2018, 1,914 individuals were able to resettle in the United States as CAM refugees, and about 1,464 people were able to reunite with their families in the United States as CAM parolees.  *Id.*, Ex. C, App'x at 125.

### B.      CAM Shutdown; Settlement Requires Reopening

Within two months of the Trump Administration taking office in 2017, the Department of Homeland Security ("DHS") stopped processing CAM parole cases, including for conditionally

approved applicants who had completed processing and paid for their flights to the United States. *S.A. v. Trump* (*S.A. II*), No. 18-cv-03539-LB, 2019 WL 990680, at *1 (N.D. Cal. Mar. 1, 2019); *see, e.g.*, Jesus Decl. ¶¶ 22, 25-26, App'x at 13-14.   Six months later, DHS publicly announced that it was terminating the parole portion of the CAM Program and rescinding *en masse* conditional parole approvals from 2,714 children and family members in final stages of processing. *See S.A. II*, 2019 WL 990680, at *1.   The refugee portion of the CAM Program remained open. *See* Evarts Decl., Ex. D, App'x at 129.

On November 8, 2017, the State Department ("DOS") announced it would no longer accept new CAM applications beginning on November 10.   Evarts Decl., Ex. E, App'x at 131.   Processing of all pending cases continued, *see id.*, App'x at 132, until DOS closed nearly 4,000 CAM cases that had not yet been interviewed by January 2018, *see id.*, Ex. C, App'x at 123.

Meanwhile, in 2018, several families and the organization CASA de Maryland challenged the CAM parole termination in federal court, arguing *inter alia* that the termination was arbitrary and capricious in violation of the Administrative Procedure Act ("APA") because the agency failed to consider the serious reliance interests of conditionally approved parolees when it rescinded their conditional approvals *en masse.   S.A. I*, 363 F. Supp. 3d at 1055; *S.A. II*, 2019 WL 990680, at *5.[3] Relying on the plaintiffs' likelihood of success on the merits of this claim, the court granted a preliminary injunction that required the agency to reopen and process to completion the 2,714 conditionally approved CAM parolees.   *S.A. II*, 2019 WL 990680, at *13, 17.   A month later, the parties settled the case ("*S.A.* settlement"), with the defendants agreeing to convert the court's preliminary injunction to a permanent injunction, pursuant to which the defendants were required

---

[3] Proposed Intervenors' counsel, the International Refugee Assistance Project, was also counsel in *S.A.*

to reopen and process the conditionally approved CAM parolee cases, and to file quarterly reports with the court detailing their progress.  Evarts Decl., Ex. F, App'x at 135-38; *id.*, Ex. G, App'x at 146.  To date, at least 1,568 CAM parolees have entered the U.S. as a result of the *S.A.* settlement. *Id.*, Ex. H, App'x at 160.  Due to delays in processing related to the Covid-19 pandemic, hundreds of conditionally approved parolees remain in processing and the defendants continue to file quarterly progress reports with the *S.A.* court.  *See id.*, App'x at 156-58 (referring to 2,042 *S.A.* beneficiaries notified of settlement processing and 1,848 beneficiaries who have completed medical exams); *id.*, Ex. I, App'x at 164-65 (describing impact of Covid-19 pandemic on processing of CAM parole cases pursuant to court-ordered settlement).

## C.    CAM Refugee and Parole Program Reopened and Old Cases Reinstituted

In March 2021, DHS and DOS announced the reopening of the CAM Program in two phases.  First, CAM cases that were administratively closed *en masse* in January 2018 would be reopened if the family remained eligible and wished to proceed.  *Id.*, Ex. J, App'x at 175.  A few months later, DHS and DOS announced the reopening of CAM to new applications and that eligibility criteria would be expanded to include legal guardians and parents in the United States who had a pending asylum application or pending U-visa application filed before May 15, 2021. *Id.*, Ex. K, App'x at 177.

Ten months after the announcement of the CAM reopening, and more than seven years after the CAM Program was created, Plaintiff States filed this case seeking to "[e]njoin the Defendants' use of the parole authority under the Central American Minors Program," to "set [the CAM Program] aside to the extent that it provides any benefits outside the contours of the Refugee Admissions Program," and to "[e]njoin the Defendants from carrying out the CAM Program until [they] engage[] in rulemaking" under the APA.  Am. Compl. at 35-36 (Prayer for Relief), ECF No. 14.

### D.       Proposed Intervenors Are the Intended Beneficiaries of the CAM Program

Proposed Intervenor Jesus has lived in Texas for 22 years and is a beneficiary of the *S.A.* settlement.  Jesus Decl. ¶¶ 2, 21, 23, 27, App'x at 12-14.  She has Temporary Protected Status (TPS), and she lives with her U.S. citizen daughter, and her spouse and father who have TPS.  *Id.* ¶¶ 3-6, App'x at 12.  In 2015, she filed a CAM application on behalf of her then-16-year-old son in El Salvador.  *Id.* ¶ 20, App'x at 13.  Her son was conditionally approved for parole, completed processing, and paid for his flight to the United States in 2017.  *Id.* ¶¶ 22-24, App'x at 13.  Jesus's son was, however, unable to reunite with his mother because of the CAM parole program termination.  *Id.* ¶¶ 25-26, App'x at 14; *see supra*, Background (B).  Jesus's son had to stop going to school in 2019 because gang violence in his area made it too dangerous for him to travel.  *Id.* ¶¶ 16-18, App'x at 13.  Jesus's son's CAM case was reopened pursuant to the *S.A.* settlement, and he remains in application processing in El Salvador.  *Id.* ¶¶ 27-28, App'x at 14.  Jesus describes as her "great fear" that "the U.S. government will cancel the CAM program again just like the last time, and that, at the very last minute, [her] son will be prevented from joining [her] here in the United States."  *Id.* ¶ 30, App'x at 14.

Proposed Intervenor Rosa lives in Florida with her 15-year-old son and her husband.  Rosa Decl. ¶ 2, App'x at 25.  Her husband has TPS and has lived in the United States for approximately 22 years.  *Id.* ¶ 3, App'x at 25.  Rosa, her son, and her daughter are *S.A.* settlement beneficiaries; they came to the United States as CAM parolees and are eligible to apply to extend their CAM parole status for an additional time-limited period.  *Id.* ¶¶ 25, 27, 32-33, App'x at 27-28.  Rosa's husband applied for the family to come to the United States through CAM in approximately 2015, and they were conditionally approved for parole in 2017.  *Id.* ¶¶ 11, 15, App'x at 25-26.  While the family was waiting to complete processing in 2017, Rosa's brother was murdered and the police declined to investigate; Rosa and her children essentially became prisoners in their own

home because they were too afraid to leave. *Id.* ¶¶ 17-19, App'x at 26. Soon thereafter, Rosa learned that the parole portion of the CAM Program had been terminated. *Id.* ¶ 21, App'x at 27. The family's CAM cases were reopened under the *S.A.* settlement, and Rosa and her daughter were able to travel to the United States in 2020. *Id.* ¶¶ 23, 25, App'x at 27. Rosa's son had to wait in El Salvador for an additional year because of processing delays related to the Covid-19 pandemic; this was the first time Rosa had spent even a night apart from her son. *Id.* ¶¶ 24, 27-28, App'x at 27-28.

Proposed Intervenor Timoteo has lived in New Jersey for 20 years. Timoteo Decl. ¶ 2, App'x at 38. He has TPS, and he lives with his three U.S. citizen children. *Id.* ¶¶ 3-4, App'x at 38. He has been attending the same Catholic church in New Jersey for approximately 20 years. *Id.* ¶ 5, App'x at 38. Timoteo applied to CAM on behalf of his then 15-year-old daughter in El Salvador, but the case was closed before his daughter received a decision on the application. *Id.* ¶¶ 14, 16, App'x at 39. Timoteo says that after he learned his daughter's case was closed he felt "helpless to do anything to bring [his] family together and that [he] was letting [his] whole family down." *Id.* ¶ 17, App'x at 39. Thereafter, Timoteo's daughter was threatened by a gang member after she refused to date him, and his daughter had to leave her home and relocate because she was so concerned for her safety. *Id.* ¶¶ 19-21, App'x at 39. Timoteo's daughter's CAM case was reopened in 2021 as a result of the CAM Program reopening. *Id.* ¶ 24, App'x at 40. Timoteo's daughter is still waiting for a decision on her case. *Id.* ¶ 27, App'x at 40.

Proposed Intervenor Uzias has lived in Alaska for nearly three years. Uzias Decl. ¶ 3, App'x at 50. He lives with several family members who have lived in Alaska for more than 20 years, including his father with Temporary Protected Status and his brother who is a U.S. citizen. *Id.* ¶¶ 4-6, App'x at 50. His aunt, a U.S. citizen, also lives in Alaska. *Id.* ¶ 7, App'x at 50. The

6

family has attended the same church in Alaska for 10 years.  *Id.* ¶ 8, App'x at 50.  Uzias has a

pending application for asylum; he had to flee his native Honduras after he began to receive death

threats in connection with his work supporting the integrity of a political election.  *Id.* ¶¶ 17-19,

26, App'x at 51-52.  Uzias fears for the safety of his two minor, unmarried children who remain

in Honduras.  *Id.* ¶¶ 12-16, 21, App'x at 50-51.  He is eligible to apply to the CAM Program on

behalf of his children and his grandmother who is their caretaker, and he has been actively seeking

the assistance of a resettlement agency with filing a CAM application since November 2021.  *Id.*

¶¶ 26-30, App'x at 52.

**ARGUMENT**

Courts have broad discretion to permit intervention, and the Fifth Circuit has been clear

that intervention should be permitted "where no one would be hurt and greater justice could be

attained."  *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).  Proposed Intervenors are

entitled to intervene by right because they meet each of the requirements for doing so.  In the

alternative, Proposed Intervenors respectfully request that the Court permit them to intervene.

**I.     Proposed Intervenors are Entitled to Intervention as of Right**

A non-party has the right to intervene in an action when: (1) their intervention application

is timely; (2) they "have an interest relating to" the subject matter of the action; (3) they are "so

situated that disposing of the action may as a practical matter impair or impede [their] ability to

protect [their] interest"; and (4) their interests are not "adequately represent[ed]" by the existing

parties to the suit.  Fed. R. Civ. P. 24(a)(2); *see also DeOtte v. State of Nevada*, 20 F.4th 1055,

1067 (5th Cir. 2021).  Proposed Intervenors satisfy each of these requirements.

Rule 24(a)(2) "is to be liberally construed, with doubts resolved in favor of the proposed

intervenor."  *Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016)

(internal quotation marks omitted).  Intervention should be granted here for the same reasons as in

7

*Texas v. United States*, in which the Fifth Circuit held that parent-beneficiaries of a federal immigration program were entitled to intervene as of right in a lawsuit brought by states challenging the legality of the program.  *See* 805 F.3d at 664.

### A. Proposed Intervenors' Motion is Timely

Courts considering the timeliness of an intervention motion look to the context, rather than absolute measures of timeliness.  *Sierra Club*, 18 F.3d at 1205 ("The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.").  The Fifth Circuit has identified four factors for courts to consider, each of which counsels in favor of allowing intervention in this case: (1) how long the proposed interveners knew or reasonably should have known of their interest in the case; (2) prejudice existing parties may suffer as a result of any delay by proposed intervenors; (3) prejudice proposed intervenors would suffer if not permitted to intervene; and (4) any unusual circumstances relating to timeliness.  *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

Proposed Intervenors' motion is timely. Their motion to intervene comes promptly after Proposed Intervenors learned of their interest in this case—when Plaintiffs filed their Complaint less than two months ago on January 28. The litigation remains in its infancy, and the timing of this motion does not prejudice the existing parties:  Plaintiffs filed an Amended Complaint last week and Defendants have yet to respond to it; no motions have been filed; no administrative record documents have been produced; no discovery has been conducted; no scheduling order has

been issued; and no trial date has been set.[4]   Proposed Defendant-Intervenors will, however, be severely prejudiced if the Court denies their motion to intervene, as described in detail below.

### B.      Proposed Intervenors Have a Protectable Interest in the Case

Intervention as of right requires an interest that is "concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658.  The inquiry turns on whether the would-be intervenor has a "real, concrete stake in the outcome of th[e] litigation"—not a "mere[] prefer[ence]" for one outcome over another.  *Id.* at 657, 661.  Where, as here, proposed intervenors are the intended beneficiaries of a program, they have a sufficient legally protectable interest to intervene in a case challenging the legality of the program.  *See, e.g., id.* at 658-59 (collecting cases); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566-67 (5th Cir. 2016).

In *Texas*, the Fifth Circuit held that those immigrants eligible to apply for the Deferred Action for Parents of American and Lawful Permanent Residents (DAPA) program[5] were "intended beneficiaries" of that program—i.e., the government created the program to benefit people like them—and therefore established that they had the requisite interest to intervene as of right in a case challenging the legality of the program.  *See Texas*, 805 F.3d at 660.  The court held that the applicants' interest was sufficiently "protectable" to support intervention even though they were not guaranteed to receive benefits under DAPA, and even though the benefits, if granted, could be terminated in the government's discretion.  *Id.* at 661.   The Fifth Circuit reasoned that the applicants' interest was sufficient because if the program were terminated, they would "lose their opportunity" to apply for the benefits.  *Id.*

---

[4] The Court is currently determining whether this case should be transferred over Defendants' opposition based on the notice of related case identified in Plaintiffs' amended Civil Cover Sheet. *See* Order, ECF No. 11; Amended Civil Cover Sheet, ECF No. 3.

[5] The DAPA program permitted undocumented parents of U.S. citizen children to apply for temporary protection from deportation and for employment authorization.

Here, as in *Texas*, the Proposed Intervenors are "intended beneficiaries" of the CAM Program and have a "concrete, personalized" stake in the outcome of this litigation sufficient to support intervention.  Specifically, Proposed Intervenors have demonstrated that they satisfy the CAM Program criteria and are likely to be granted CAM benefits.  *See* Jesus Decl. ¶¶ 1-3, 8-10, 16-19, 20-22, App'x at 12-13; Rosa Decl. ¶¶ 3-4, 9-15, 25, App'x at 25-27; Timoteo Decl. ¶¶ 1-3, 7-10, 14-15, 19-21, 24, App'x at 38-40; Uzias Decl. ¶¶ 1-3, 11-16, 18-19, 26-28, App'x at 50-52.  Indeed, three of the Proposed Intervenors have already applied to the CAM Program, one of whom has already been granted CAM parole and another of whom has been conditionally approved for CAM parole.  *See* Rosa Decl. ¶¶ 15, 25, App'x at 26-27; Jesus Decl. ¶¶ 22-24, 28, App'x at 13-14; Timoteo Decl. ¶¶ 14, 24, App'x at 39-40.   Like the parent-intervenors in *Texas*, their interest in the CAM Program's continued existence is "neither 'undifferentiated' nor generalized," but rather concrete and personalized.  *See Texas*, 805 F.3d at 660.

Moreover, the Fifth Circuit has recognized that the interest requirement "may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group."  *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (internal quotation marks omitted) (proposed intervenor parents had requisite interest where they and their children were the "primary intended beneficiaries" of challenged program).  This case involves public interest questions of great importance, and Proposed Intervenors easily satisfy the standard.

### C.     Proposed Intervenors' Ability to Protect Their Interests May be Impaired Absent Intervention

Proposed Intervenors meet their "minimal" burden to demonstrate that the disposition of this case "*may*" impair or impede their ability to protect their interest.  *Id.* at 344-45 (internal quotation marks omitted).  If Plaintiffs were to obtain the relief they seek—termination of CAM parole in all its forms—or even part of the relief they seek, Proposed Intervenors may lose the

opportunity to be reunited with their families or to remain with their families in safety in the United States through the CAM Program.  The disposition of this case therefore may impair Proposed Intervenors' ability to protect their interests.  *See, e.g., id.* at 344 (requirement satisfied where case disposition could impact the "full range of school choices" of parent beneficiaries of school choice program).

### D. Defendants May Inadequately Represent Proposed Intervenors' Interests

Finally, Proposed Intervenors' interests may be inadequately represented by the existing parties.  Fed. R. Civ. P. 24(a)(2).  A proposed intervenor need not show that representation by existing parties will be inadequate.  *Entergy Gulf States La., L.L.C. v. U.S. EPA*, 817 F.3d 198, 203 (5th Cir. 2016).  Rather, a proposed intervenor must show only that representation "may be" inadequate.  *Wal-Mart*, 834 F.3d at 569 (quoting *Texas*, 805 F.3d at 662).

Under Fifth Circuit precedent, the burden on the proposed intervenor with respect to this factor depends on whether one or both of the presumptions of adequate representation are applicable, specifically: (1) the proposed intervenor has the same "ultimate objective" as a party to the case, and (2) a party to the case "is a governmental body or officer charged by law with representing the interests of the intervenor."  *Texas*, 805 F.3d at 661 (internal quotation marks omitted and cleaned up).  If neither presumption applies, the proposed intervenor has a "minimal" burden that is "easily met" where the purported representative has "extensive" and potentially competing interests in the case that "might" result in inadequate representation of a proposed intervenor with only one interest.  *See, e.g., Brumfield*, 749 F.3d at 345-46 (internal quotation marks omitted).  If one or both of the presumptions of adequacy apply, the proposed intervenor's burden is still "relatively minimal" but requires "something more than speculation."  *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (internal quotation marks omitted).

11

Here, the presumptions of adequate representation do not apply, and Proposed Intervenors satisfy their "minimal" burden for this factor for the same reasons as in *Brumfield*.  In *Brumfield*, the Fifth Circuit held that parents of children receiving school vouchers were entitled to intervene as of right in a lawsuit between the federal and state governments over the voucher program, and the presumptions of adequate representation did not apply.   749 F.3d at 345-46.   Similar to *Brumfield*, Defendants are not the legal representatives of CAM beneficiaries, and they have more extensive interests in this litigation as compared to Proposed Intervenors, whose sole interest is in the CAM Program remaining open, as described below.  *See id*.

But even if the *Brumfield* analysis were not binding and one or both of the presumptions of adequacy do apply here, Proposed Intervenors can overcome the presumptions because their "interests diverge from the putative representative's interests in a manner germane to the case"— as demonstrated by the "'lack of unity in all objectives, combined with real and legitimate additional or contrary arguments[.]'"  *Texas*, 805 F.3d at 662 (quoting *Brumfield*, 749 F.3d at 346).  As the Fifth Circuit has recognized, beneficiaries of a challenged immigration program have different interests in the program's continuation than does the federal government:  whereas the federal government has broad institutional interests in "securing an expansive interpretation of executive authority, efficiently enforcing the immigration laws, and maintaining its working relationship with the States," program beneficiaries have narrow, personal interests in being united with their families.  *Id.* at 663 (internal quotation marks omitted); *see also Brumfield*, 749 F.3d at 346 (beneficiaries of program were concerned "only" with receiving program benefits while state government had "more extensive interests"); *Sierra Club*, 18 F.3d at 1208 (government entities and officials must "represent the broad public interest").  Just as in the DAPA case, Defendants have broad institutional interests in preserving the CAM Program, while Proposed Intervenors

12

have narrow, personal interests in reuniting with their family members and ensuring their relatives can escape the dangers they face in Central America, Jesus Decl. ¶¶ 15-18, 29-31, App'x at 13-14; Timoteo Decl. ¶¶ 12, 17-21, 23, 28, App'x at 38-40; Uzias Decl. ¶¶ 17-21, 24-25, 31, App'x at 51-52, or in remaining united with their families in safety in the United States, Rosa Decl. ¶¶ 17-20, 22, 28-31, 34, App'x at 26-28.

That these divergent interests are germane to this case is grounded in facts, and more than mere speculation. *League of United Latin Am. Citizens*, 884 F.2d at 189 (holding that the burden of showing inadequacy is "relatively minimal," but requires more than speculation). For example, Defendants do not have direct access to facts showing that the CAM parole termination sought by Plaintiffs would *cause* irreparable harm to CAM beneficiaries, which has important implications at the remedy stage, *see infra*, and recent litigation history demonstrates that they are unlikely to press this argument. This is because Defendants' concerns about the humanitarian impact of terminating the CAM Program must be balanced against their broader institutional interests,[6] such as their interest in an expansive interpretation of executive authority. *See generally Texas v. United States*, No. 6:21-cv-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021) (federal government "by necessity" must balance advocacy for immigration policy on humanitarian grounds with other institutional and political duties). While Defendants now contend that the executive has the authority to reopen the CAM Program, not long ago they argued that the executive had the authority to stop processing conditionally approved parolee cases without notice, to terminate

---

[6] As Plaintiffs acknowledge, the Obama Administration justified the creation of the CAM Program in political, institutional, and humanitarian terms—as a means to dissuade unaccompanied minors from making the "'unlawful and dangerous'" trip to the U.S. Southern border following the "exponential rise" in the number of unaccompanied immigrant children crossing the border. See Am. Compl. ¶ 52 (quoting U.S. Dep't of State, Proposed Refugee Admissions for Fiscal Year 2015 at iii-iv (Sept. 14, 2014), https://bit.ly/3mnxZUd).

CAM at any time, and to mass rescind conditional parole approvals from beneficiaries who had completed processing and were on the verge of travel—notwithstanding the humanitarian impact of those policies on program beneficiaries. *See S.A. I*, 363 F. Supp. 3d at 1062-64.

In contrast, Proposed Intervenors seek to intervene specifically because they are concerned about the humanitarian impact on themselves and other beneficiaries if CAM is terminated or dismantled. *See, e.g.*, Rosa Decl. ¶¶ 17-19, 22, App'x at 26-27 (around time CAM was terminated, Rosa's brother was murdered and the family became de facto prisoners in their own home because it was too dangerous to leave); Timoteo Decl. ¶¶ 19-21, App'x at 39 (after CAM was terminated, daughter was threatened by gang member who wanted to date her and she had to flee from her home); Jesus Decl. ¶¶ 16-18, App'x at 13 (after CAM was terminated, son had to stop going to school because travel became too dangerous). This is their sole concern; no other concerns are balanced against it in their advocacy. Proposed Intervenors are prepared to argue that termination or dismantling of the CAM program will result in irreparable harm to beneficiaries, and such harm must be considered in the equitable balancing required before issuance of any injunction, as well as in considering an appropriate remedy for any violation of the Administrative Procedure Act. There is "at least a chance that" Defendants' advocacy of Proposed Intervenors' interests will be inadequate, which is sufficient to meet Proposed Intervenors' relatively minimal burden. *See, e.g., Second Baptist Church v. City of San Antonio*, No. 5:20-CV-29-DAE, 2020 WL 6821324, at *5-6 (W.D. Tex. Apr. 17, 2020) (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)) (even where purported representative "ha[d] taken no action inconsistent" with proposed intervenors' interest, failure to "properly address or discuss" the interest was sufficient to rebut presumption of adequate representation).

14

## II.    In the Alternative, Proposed Intervenors Should be Permitted to Intervene

In the alternative, permissive intervention is appropriate in this case.  Courts may permit intervention when (1) the proposed intervenor's application is timely; (2) the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact"; and (3) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1), (3); *see League of United Latin Am. Citizens*, 884 F.2d at 189 n.2.

Here, Proposed Intervenors satisfy each of these factors for the same reasons discussed *supra*, Argument (I).  Their defenses of the CAM Program would raise many common questions of law and fact with those of Defendants.  These include the standing of Plaintiffs to pursue this litigation; the scope of Defendants' statutory parole authority; whether reopening the CAM Program was a final agency action that required notice and comment rulemaking; whether Defendants were required to consider the States' reliance interests when they reopened the CAM Program; whether injunctive relief is appropriate; and many others.  Resolution of these questions is central to the original parties' dispute and to Proposed Intervenors' defenses.

Moreover, permitting intervention will not unduly delay or prejudice the original parties' rights, as Proposed Intervenors have timely moved to intervene while the case is in its infancy. *See supra*, Argument (I)(A)*; Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372-73 (W.D. Tex. 2021) ("The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis."); *Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, No. CIV.A. H-05-3167, 2006 WL 2382250, at *6 (S.D. Tex. Aug. 16, 2006) ("This case is at an early stage and intervention will neither delay the proceedings nor prejudice the existing parties.").  If permitted to intervene, Proposed Intervenors can adhere to any future briefing schedule and are prepared to act so as not to delay the progress of the litigation.

Moreover, additional considerations warrant permissive intervention here: in determining whether to permit intervention, courts consider whether the proposed intervenor is likely to provide significant contributions to the development of the underlying factual issues. *See League of United Latin Am. Citizens*, 884 F.2d at 189. Here, Proposed Intervenors serve an essential function—bringing into focus the beneficiary families who will be personally affected by the outcome of this case. *See Brumfield*, 749 F.3d at 344-45 (the "purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."). Indeed, Proposed Intervenors can speak from their own personal knowledge about the harms families will suffer if the CAM Program is abruptly dismantled because they have already personally experienced this harm. *See* Rosa Decl. ¶¶ 17-19, 22, App'x at 26-27; Jesus Decl. ¶¶ 16-18, App'x at 13; Timoteo Decl. ¶¶ 19-21, App'x at 39.

Courts in this circuit routinely permit intervention under such circumstances. For example, in *Texas v. United States*, Judge Tipton permitted intervention by non-profit organizations representing immigrants in a challenge brought by Texas and other states to a policy temporarily pausing deportations. *See* 2021 WL 411441, at *3-4. Judge Tipton recognized that the intervenors' narrow interests in the continuation of the policy were sufficiently different from the broad institutional interests of the federal government to warrant intervention, and reasoned that permissive intervention served the interest of justice by ensuring that the perspectives and arguments of the intended beneficiaries of the immigration policy would be considered. *Id.* Other courts in this circuit have recognized that permissive intervention is appropriate where proposed intervenors are likely to make a significant contribution to the development of the underlying factual and legal issues—even where intervenors are not able to meet the inadequacy of interest requirement to support intervention as of right. *See, e.g., Symetra Life Ins.*, 2006 WL 2382250,

16

at *6; *EEOC v. Wellpath*, No. 5:20-CV-1092-DAE, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021); *see also Second Baptist Church*, 2020 WL 6821324, at *6 ("Even if [Movants] had failed to demonstrate intervention as of right under Rule 24(a), the [c]ourt would still allow [Movants] to permissively intervene."); *Students for Fair Admissions*, 338 F.R.D. at 372-73 (same).[7]

## CONCLUSION

In light of the foregoing, Proposed Intervenors respectfully request that the Court grant their motion.

---

[7] Federal Rule of Civil Procedure 24(c) requires the filing of a "pleading" along with a motion to intervene. While the Fifth Circuit "favor[s] 'a permissive interpretation' of Rule 24(c)," *Chaucer Corp. Capital, No. 2 Ltd. v. Azad*, No. CV H-10-180, 2011 WL 13249479, at *1 (S.D. Tex. Sept. 8, 2011), and an Answer is premature at this early stage, in an abundance of caution Proposed Intervenors are attaching a proposed Answer as Exhibit A to this motion.  Proposed Intervenors respectfully suggest that, should intervention be granted, the Answer not be filed; or, in the alternative, that they be permitted to file a Motion to Dismiss and amend their Answer as appropriate if such actions would not unduly delay this case.

Dated:    March 22, 2022                    Respectfully submitted,

/s/ Debra J. McComas                        /s/ Linda B. Evarts
Debra J. McComas                            Linda B. Evarts (NYS Bar #5236948)*
HAYNES & BOONE LLP                          Kathryn C. Meyer (NYS Bar #5504485)*
State Bar No. 00794261                      Mariko Hirose (NYS Bar #4802674)*
2323 Victory Ave., Suite 700                INTERNATIONAL REFUGEE
Dallas, Texas 75219                         ASSISTANCE PROJECT
Tel. (214) 651-5000                         One Battery Park Plaza, 4th Floor
Fax (214) 651-5940                          New York, NY 10004
*debbie.mccomas@haynesboone.com*            Tel. (516) 838-1655
                                            Fax: (929) 999-8115
                                            *levarts@refugeerights.org*
                                            *kmeyer@refugeerights.org*
                                            *mhirose@refugeerights.org*

                                            *pro hac pending*

                    **Counsel for Proposed Defendant-Intervenors**


                    <u>**CERTIFICATE OF CONFERENCE**</u>

        On March 16, 2022, Proposed Intervenor's counsel conferred with counsel for Plaintiffs
concerning this motion.  The identities of the attorneys conferring were as follows: Ryan Walters,
Michelle Ghetti, and Joseph Scott St. John for the Plaintiffs, and Linda B. Evarts, Kathryn C.
Meyer, Mariko Hirose, and Debra J. McComas for the Proposed Intervenors.  Plaintiffs' counsel
is opposed to the motion.

        On March 16, 2022, Proposed Intervenor's counsel conferred with counsel for Defendants
concerning this motion.  The identities of the attorneys conferring were as follows: Erez Reuveni
and Joseph Darrow for the Defendants, and Linda B. Evarts, Kathryn C. Meyer, Mariko Hirose,
and Debra J. McComas for the Proposed Intervenors.  Defendants oppose intervention as of right
under Rule 24(a), and take no position on permissive intervention under Rule 24(b), but note that
should the Court grant permissive intervention, it need not address intervention as of right.

                                            /s/ *Linda B. Evarts*
                                            Linda B. Evarts


                                    18

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 22, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system. I hereby certify that I have served the document on all counsel by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) via the Court's CM/ECF filing system.

/s/ *Debra J. McComas*
Debra J. McComas